# Exhibit 7



600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
**T** 202.344.4000  **F** 202.344.8300   www.Venable.com

November 23, 2020

Ronald M. Jacobs

**T 202.344.8215**
**F 202.344.8300**
RMJacobs@Venable.com

*Via email to: catherine@truethevote.org*

Ms. Catherine H. Engelbrecht
True the Vote, Inc.
13909 Track Road East
Cat Spring, TX 78933

> Re:    *Notice of Claim and Pre-Suit Demand*

Dear Ms. Engelbrecht:

I write subsequent to my e-mail correspondence dated November 22, 2020. Despite our reasonable request that True the Vote return at least $2 million of Mr. Eshelman's conditional gifts totaling $2.5 million by wire transfer this morning, no such wire transfer has materialized. In light of True the Vote's repeated failure to comply with Mr. Eshelman's requests for repayment, this will serve as notice of our intent to file suit against True the Vote in federal court tomorrow, Tuesday, November 24, if True the Vote fails to remit $2 million to Mr. Eshelman by wire transfer before 5 p.m. EST today.

First, a summary of the underlying facts. Immediately after the November 3rd general election, Mr. Eshelman decided to support efforts to investigate allegations of illegal and fraudulent conduct in connection with the 2020 general election. Following conversations with you about True the Vote's plan to pursue such investigations and to bring related litigation, Mr. Eshelman agreed on November 5th to donate $2 million to True the Vote on the condition that the funds would be used exclusively to fund its "Validate the Vote 2020" initiative.[1] Mr. Eshelman caused those funds to be wired to True the Vote that same day. Eight days later, on November 13th, Mr. Eshelman agreed to give True the Vote an additional $500,000 – again on the condition that those funds would be used to fund the Validate the Vote 2020 efforts.

---

[1] A one-page summary of that initiative circulated by True the Vote to Mr. Eshelman is attached hereto as <u>Exhibit A</u>.



Ms. Catherine H. Engelbrecht
November 23, 2020
Page 2

Between November 5th and November 16th, Mr. Eshelman and his team repeatedly sought substantive updates on the status of the Validate the Vote 2020 efforts, including investigation, litigation, and communication strategy in key states. Those requests, however, were met with platitudes and empty promises of follow-up. After eleven days with little progress and a rapidly approaching deadline for certification of election results, Mr. Eshelman called a meeting on November 16th with you and other individuals affiliated with True the Vote in order to develop a comprehensive strategy to accomplish the goals of the Validate the Vote 2020 effort. Unfortunately, that call proceeded just as so many before and ended without any meaningful action items or next steps. All the while, time marched on.

Following the November 16th meeting, it became clear that True the Vote had wasted too much time and would be unable to execute the ambitious plans that Mr. Eshelman had agreed to fund. Accordingly, Mr. Eshelman sent you an e-mail early on November 17th to request that True the Vote refund the balance of his $2.5 million donation and provide an accounting of all funds spent out of that $2.5 million. Mr. Eshelman's e-mail made clear his expectation that any such expenditures "should be de minimis since nothing was accomplished over the 10 or so days" as well as his expectation that True the Vote would provide a "prompt response."[2]

Consistent with True the Vote's dilatory conduct that initially led Mr. Eshelman to seek the return of his directed donation, 48 hours passed without any action or response to Mr. Eshelman's request. Given other organizations' immediate need for funds to pursue similar activities, Mr. Eshelman followed up with you early on November 19. Specifically, he requested that you "[p]lease acknowledge receipt of my previous email with wiring instructions" and that you "return the bulk of the money" he had conditionally donated to True the Vote.[3]

Again, 48 hours passed without a response from you or anyone affiliated with True the Vote. Given True the Vote's refusal to respond to Mr. Eshelman's correspondence, I wrote you to specifically request that True the Vote confirm by 7 p.m. EST on November 22 that it would agree to promptly return Mr. Eshelman's $2.5 million by wire transfer initiated by 10 a.m. EST on Monday, November 23. My November 21 letter further underscored that time was of

---

[2] A copy of Mr. Eshelman's November 17 e-mail is attached hereto as <u>Exhibit B</u>.
[3] A copy of Mr. Eshelman's November 19 e-mail is attached hereto as <u>Exhibit C</u>.



Ms. Catherine H. Engelbrecht
November 23, 2020
Page 3

the essence, noting that "Mr. Eshelman expects his money back immediately as he has other efforts he wishes to fund that have very short timelines."[4]

Less than an hour and a half before 7 p.m. on November 22, you responded to my letter via e-mail without indicating whether True the Vote would agree to return the balance of Mr. Eshelman's $2.5 million in donations.[5] Instead, your e-mail again sought to kick the can down the road. While it notes that True the Vote has "started to put together the costs and expenses of the project" and has "spent the money on the project [you] discussed with Mr. Eshelman," you also note without any specificity that True the Vote does not "expect to have complete information on what [it has] spent on the project this month until next month," that True the Vote has "made commitments to many people, including whistleblowers, that [it] must fulfill," and that True the Vote has "committed to activities that we must complete."[6]

Shortly after receiving your November 22 e-mail, I responded by e-mail noting Mr. Eshelman's expectation that True the Vote would wire at least $2 million to him first thing today, November 23.[7] I also noted that we were highly skeptical that more than $500,000 of Mr. Eshelman's $2.5 million in directed contributions had been committed based on the limited reports Mr. Eshelman has received to-date. Again, True the Vote failed to comply with that request.

Given True the Vote's repeated refusal to comply with Mr. Eshelman's time-sensitive requests for return of the balance of his $2.5 million in gifted funds and the urgent need for those funds to support other election-related projects, True the Vote has left us no choice but to pursue legal redress to obtain those funds. As noted above, we intend to file complaint in federal court against True the Vote on Tuesday, November 24. We expect that complaint will allege claims for breach of contract, conversion, and violation of the Texas Deceptive Trade Practices Act. We intend to seek a full refund of the $2.5 million in conditional gifts that Mr. Eshelman gave to True the Vote as well as damages and attorney's fees. We also intend to

---

[4] A copy of my November 21 correspondence is attached hereto as <u>Exhibit D</u>.

[5] A copy of your November 22 e-mail is attached hereto as <u>Exhibit E</u>.

[6] To the extent your November 22 e-mail references an invoice for $1 million from Old Town Digital Agency, LLC, we understand that invoice has been cancelled since the time for communications is over and True the Vote never requested Old Town Digital to perform any of the contemplated services.

[7] A copy of my November 22 e-mail is attached hereto as <u>Exhibit F</u>.



Ms. Catherine H. Engelbrecht
November 23, 2020
Page 4

seek equitable relief to preserve the status quo and to prevent any further disbursement of Mr. Eshelman's funds.

As you are no doubt aware, Texas law provides that donors have the right to revoke a gift whenever the gift remains "conditional on a future act." *Oadra v. Stegall*, 871 S.W.2d 882, 891-92 (Tex. App. 1994). That right has been recognized even where possession of the allegedly gifted property has been transferred to the purported donee. *Yates v. Blake*, 491 S.W.2d 751, 754 (Tex. App. 1973). Here, there appears to be no dispute that Mr. Eshelman's gifts were made contingent on their use to fund the Validate the Vote 2020 effort or that those efforts remain largely unfulfilled.[8] Since the conditions on Mr. Eshelman's gifts have not been satisfied, he retains the right to revoke his conditional gift. Again, there can be no reasonable dispute that Mr. Eshelman has requested his funds be returned four times now.[9] Accordingly, there can be no doubt that the gift is not valid. To the extent True the Vote disagrees, it will be burdened to prove a valid gift by *clear and convincing evidence*. *Oadra*, 871 S.W.2d at 891.

In similar circumstances, other courts have held that a non-profit entity's failure to abide by a condition on a directed donation amounts to a breach of the underlying gift agreement remediable by a return of the gifted funds. *Adler v. SAVE*, 74 A.3d 41, 43 (N.J. App. Div. 2013); *Tennessee Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 119 (Tenn. Ct. App. 2005). Those courts have so held even where "the conditions that existed at the time of the gift may have materially changed, making the fulfillment of the donor's condition either impossible or highly impractical." *Adler*, 74 A.3d at 43. Since True the Vote has failed to comply with the conditions on Mr. Eshelman's $2.5 million gift – that is, that the funds would be used in support of the Validate the Vote 2020 activities as originally outlined in Exhibit A – there can be no doubt that True the Vote is obliged to return those funds.

Because True the Vote has no legal or equitable right to retain Mr. Eshelman's $2.5 million in conditional gifts, they must be returned immediately. Failure to do so will give rise to claims for conversion, breach of the gift agreement between Mr. Eshelman and True the Vote, and violation of the Texas Deceptive Trade Practices Act. If Mr. Eshelman were to prevail on those claims – which we expect he would – he would be entitled not only to repayment of the $2.5 million in conditional gifts, but also to damages under  as well as attorneys' fees under Texas Business & Commerce Code § 17.50(d) (breach of Deceptive Trade Practices Act), Texas

---

[8] *See* Ex. E ("I assure you that we have spent the money on the project we discussed with Mr. Eshelman.")

[9] *See* Exs. B, C, D, F.



Ms. Catherine H. Engelbrecht
November 23, 2020
Page 5


Civil Practice & Remedies Code § 38.001 (breach of contract), and Texas Civil Practice &
Remedies Code § 37.009 (declaratory judgments).

We remain hopeful that this matter can be resolved quickly and amicably. That cannot occur,
however, if True the Vote refuses to return Mr. Eshelman's funds. Given Mr. Eshelman's
desire to use those funds in connection with other election-related efforts with very short
timelines, time is of the essence. Accordingly, we will have no choice but to seek judicial
intervention if we cannot reach a resolution before 5 p.m. EST today. I look forward to your
prompt response.

Sincerely,

Ronald M. Jacobs

cc:     Mr. Fredric N. Eshelman