# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| FREDRIC N. ESHELMAN,<br><br>  *Plaintiff,*<br><br>v.<br><br>TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, GREGG PHILLIPS, OPSEC, LLC, JAMES BOPP, JR., AND THE BOPP LAW FIRM,<br><br>  *Defendants.* | Case No. 4:20-cv-04034<br><br>**JURY DEMANDED** |

---

**PLAINTIFF'S VERIFIED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AS TO ALL DEFENDANTS AND VERIFIED MOTION FOR PRELIMINARY INJUNCTION AS TO CATHERINE ENGELBRECHT, GREGG PHILLIPS, OPSEC, LLC, JAMES BOPP, JR., AND THE BOPP LAW FIRM**

---

Respectfully submitted,

*/s/ Douglas A. Daniels*
Douglas A. Daniels
State Bar No. 00793579
Southern District I.D. Number 19347
Doug.daniels@dtlawyers.com
DANIELS & TREDENNICK PLLC
*Attorney-in-Charge for Plaintiff*

OF COUNSEL:
DANIELS & TREDENNICK PLLC
Sabrina R. Tour
State Bar No. 24093271
Southern District I.D. Number 2714789
6363 Woodway Dr., Suite 700
Houston, TX 77057-1759
(713) 917-0024 Telephone

(713) 917-0026 Facsimile
Email: sabrina@dtlawyers.com

Meghan McCaig
State Bar No. 24070083
Federal I.D. No. 1804619
Meghan.McCaig@tklaw.com
Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)

Ronald M. Jacobs (admitted *pro hac vice*)
Christopher J. Climo (admitted *pro hac vice*)
Venable LLP
rjacobs@venable.com
600 Massachusetts Avenue, NW
Washington, D.C. 20001
(202) 344-8215
(202) 344-8300 (facsimile)

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

NATURE AND STAGE OF PROCEEDING ....................................................... 2

BACKGROUND FACTS ...................................................................................... 2

    I.    Defendants refused to comply with the conditions on the Eshelman Funds. ...... 2

    II.    Defendants repeatedly have refused to return the Eshelman Funds. ................. 4

    III.    Defendants have misappropriated Plaintiff's funds and there is a substantial risk that Plaintiff's funds may continue to be irreparably misappropriated absent judicial intervention. ............................................................................... 5

ARGUMENT AND AUTHORITIES ............................................................... 7

    I.    Standard of Review ......................................................................... 8

    II.    Plaintiff is substantially likely to succeed on the merits. .................................. 8

        *A.  Success of the Declaratory-Judgment Claim* ............................................ 9

        *B.  Success of the Breach of Contract Claim* .................................................. 10

        *C.  Success of the Conversion Claim* .............................................................. 11

        *D.  Success of the Money Had and Received Claim* ........................................ 11

        *E.  Success of the Fraudulent and Negligent Misrepresentation Claims* ......... 12

    III.    If the restraining order and preliminary injunction is not entered, Plaintiff faces a substantial threat of irreparable injury. ................................................. 13

    IV.    There is no harm that will result if the injunction is granted ............................ 16

    V.    Granting the injunction will serve the public interest. ..................................... 17

    VI.    The Court should enter the temporary restraining order and preliminary injunction. ...................................................................................................... 17

CONCLUSION ................................................................................................... 19

## INDEX OF AUTHORITIES

**Cases**

*Arthur W. Tifford, PA v. Tandem Energy Corp.*,
   562 F.3d 699 (5th Cir. 2009) ..................................................................... 11

*Ass'n of Taxicab Operators, USA v. City of Dallas*,
   760 F. Supp. 2d 693 (N.D. Tex. 2010) ........................................................ 8

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
   875 F.2d 1174 (5th Cir. 1989) ............................................................ 10, 14

*Bandy v. First State Bank, Overton*,
   835 S.W.2d 609 (Tex. 1992) ...................................................................... 11

*Baribeau v. Gustafson*,
   107 S.W.3d 52 (Tex. App.—San Antonio 2003, pet. denied) ..................... 12

*Byrum v. Landreth*,
   566 F.3d 442 (5th Cir.2009) ........................................................................ 8

*Doss v. Homecomings Fin. Network, Inc.*,
   210 S.W.3d 706 (Tex.App.—Corpus Christi 2006, pet. denied) ................ 12

*G & H Partners, Ltd. v. Boer Goats Int'l Ltd.*,
   896 F. Supp. 660 (W.D. Tex. 1995), *aff'd sub nom. G & H Partners v. Boer Goats*,
   84 F.3d 432 (5th Cir. 1996) ........................................................................ 18

*Houston Nat'l Bank v. Biber*,
   613 S.W.2d 771 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) ................ 11

*Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018) ..................................................................... 10

*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ....................................................... 8, 9, 14, 15

*Janvey v. Alguire*,
   No. 3:09-CV-724-N, 2010 WL 11626677 (N.D. Tex. May 28, 2010) ........................ 18

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
991 S.W.2d 787 (Tex. 1999) ...................................................................... 13

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .................................................................................... 9

*Oadra v. Stegall*, 871 S.W.2d 882
(Tex. App.—Houston [14th Dist.] 1994, no writ) ......................................... 9

*Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*,
621 F.2d 683 (5th Cir. 1980) ................................................................. 15, 16

*Staats v. Miller*,
243 S.W.2d 686 (Tex. 1951) ..................................................................... 12

*Texas Black Iron, Inc. v. Arawak Energy Int'l, Ltd.*,
527 S.W.3d 579 (Tex.App.—Houston [14th Dist.] 2017, no pet.)........................ 14, 18

*USACO Coal Co. v. Carbomin Energy, Inc.*,
689 F.2d 94 (6th Cir. 1982) ....................................................................... 16

*Wells v. Sansing*,
245 S.W.2d 964 (Tex. 1952) ....................................................................... 9

*Yates v. Blake*,
491 S.W.2d 751 (Tex. App.—Corpus Christi 1973, no writ) ....................................... 10

## INTRODUCTION

Plaintiff moves for entry of a Temporary Restraining Order and Preliminary Injunction enjoining Defendants True the Vote Inc. ("TTV"), Catherine Engelbrecht, Gregg Phillips, OPSEC Group, LLC ("OPSEC"), James Bopp, Jr., and The Bopp Law Firm, from transferring or otherwise dissipating any of Plaintiff's $2.5 million conditional gift ("Eshelman Funds") to TTV, pending entry by the Court of a preliminary injunction or final judgment.[1]

First, Plaintiff is likely to succeed on the merits. Based on Defendants' representations about their plan to litigate 2020 presidential election irregularities, Plaintiff gave TTV $2.5 million on the condition that TTV follow through on specific initiatives to discover and litigate voter fraud. When it became clear TTV would not meet those conditions, Plaintiff requested TTV return all remaining funds; TTV did not. TTV has transferred over $1.25 million dollars of Plaintiff's donation to the other Defendants. None of the Defendants have returned Plaintiff's money.

Second, Plaintiff faces a substantial threat of injury from Defendants' continued possession of his funds. TTV has already transferred over $1.25 million of Plaintiff's money to the other Defendants. TTV also indicated an intention to continue spending Plaintiff's money. Prior to Plaintiff's gift, TTV had only $▇▇▇▇. The other individual Defendants are, to the best of Plaintiff's knowledge, individuals of ordinary means. The

---

[1] Plaintiff previously filed a Motion Preliminary Injunction (Dkt. 10) as to Defendant TTV; that Motion is pending before the Court. This current Application and Motion requests a TRO as to all Defendants (including Defendant TTV), as well as a Preliminary Injunction as to the other five Defendants.

two entity Defendants are small businesses. Without injunctive relief, Defendants will continue to dissipate Plaintiff's money and do not have sufficient assets from which he can recover damages, depriving him of any meaningful remedy.

Third, Defendants will not be harmed if the Court grants the TRO and injunction. With the January 6, 2021 certification of the election results, there is no longer any reason for TTV, or any other Defendant, to continue spending Plaintiff's money.

Lastly, the public interest will be served if the funds are not dissipated. Allowing TTV to mislead donors, and then spend their directed donations for its own interest, does not serve the public. Likewise, allowing the other Defendants—insider beneficiary transferees of such scheme—to retain Plaintiff's funds does not serve public interest.

## NATURE AND STAGE OF PROCEEDING

Plaintiff filed suit against TTV on November 25, 2020. Plaintiff filed an Amended Complaint on December 31, 2020, adding the other Defendants and additional causes of action. No Defendant has filed an Answer, as their Answers are not yet due.

## BACKGROUND FACTS

### I.     Defendants refused to comply with the conditions on the Eshelman Funds.

Following the presidential election, Plaintiff desired to fund efforts to identify and litigate election fraud allegations. Am. Compl. (Dkt. 20) at ¶ 11-12. Plaintiff spoke with Engelbrecht, TTV's President, in early November. *Id.* at ¶ 13. Engelbrecht explained Defendants had developed a multi-pronged plan (the "Validate the Vote 2020" initiative) to investigate, litigate, and expose suspected illegal balloting and fraud in the 2020 general

election. *Id.* at ¶ 16; Exhibit A, a true and correct copy of Validate the Vote 2020 Plan. Engelbrecht represented TTV intended to file lawsuits in seven states. Am. Compl. at ¶ 17. Phillips is a current or recent employee, officer, or director of TTV. OPSEC is affiliated with and does work on behalf of TTV; Phillips is the President of OPSEC. Exhibit A. Bopp is the General Counsel of TTV and The Bopp Law Firm works on behalf of TTV. *See id.*

On November 5th, Plaintiff agreed to give $2 million to TTV ***on the condition*** the funds would be used for the initial stages of the Validate the Vote 2020 project (not other projects). *Id.* at ¶ 20-22.   Plaintiff and his representatives were clear about this. *Id.* at ¶ 21.

On November 10th, TTV paid $500,000 to Bopp and The Bopp Law Firm as a "retainer." *See* Exhibit J, a true and correct copy of TTV's Wells Fargo records at TTV009. On November 12th, TTV paid $350,000 to Phillips and OPSEC as a "retainer." *See id.* Plaintiff was not aware these payments had been made until after this litigation ensued. Am. Compl. at ¶¶ 23-24.

All Defendants had conversations with Plaintiff or his representatives, wherein it was conveyed Defendants would work jointly on the Validate the Vote 2020 initiatives. *Id.* at ¶ 25.

Soon after Plaintiff's conditional gift, Engelbrecht told Plaintiff the legal expenses might exceed the initial budget. *Id.* at ¶ 26.  On November 13th, Plaintiff agreed to give another $500,000, subject to the earlier conditions. *Id.* at ¶ 26-27.  Time was of the essence for the Defendants' Validate the Vote 2020 plan because of state and federal certification deadlines and electoral college votes. *Id.* at ¶ 28.

Plaintiff regularly sought substantive updates and written reports, but only received vague responses and no written reports. *Id.* at ¶ 29-30, 32. Plaintiff was only provided with filed complaints from four states, and no specific updates regarding the litigation status in the remaining three. *Id.* at ¶ 33. But Defendants never filed suit in the three states. Defendants failed to inform Plaintiff of that material deviation from the plan. *Id.* at ¶ 34.

Defendants' inability to make progress on the goals suggested these goals might not be met. *Id.* at ¶ 35. Given Defendants' lack of progress, Plaintiff called a meeting seeking details. *Id.* at ¶ 36, 37. At the meeting, Defendants failed to respond to Plaintiff's requests for specifics. *Id.* at ¶ 38-39. According to PACER records, Defendants voluntarily dismissed *all* of the four pending pieces of litigation, *the very same day* as Defendants' meeting with Plaintiff, and TTV issued a press release the next day. *Id.* at ¶ 40; Exhibit B, a true and correct copy of the November 17, 2020 Press Release.

## II. Defendants repeatedly have refused to return the Eshelman Funds.

TTV repeatedly refused to comply with Plaintiff's requests to return the Eshelman Funds. TTV has transferred <u>over half</u> the Eshelman Funds to the other Defendants; none have returned Plaintiff's money.

Plaintiff directed Engelbrecht to return his money multiple times. Am. Compl. at ¶ 44, 46-48; Exhibit C, a true and correct copy of Plaintiff's November 17, 2020 Email; Exhibit D, a true and correct copy of Plaintiff's November 19, 2020 Email; Exhibit E, a true and correct copy of the November 21, 2020 Letter. Engelbrecht responded on November 22 and neither confirmed TTV intended to return Plaintiff's money nor agreed to initiate a wire. Am. Compl. at ¶¶ 49-50; Exhibit F, a true and correct copy of the

4

November 22 Email. However, Engelbrecht's response *did* acknowledge Plaintiff's gifts were given on the condition that they would be used for TTV's efforts to identify and litigate fraud and illegal conduct during the general election. *Id.* Engelbrecht stated vaguely TTV had a variety of commitments that must be fulfilled. Am. Compl. ¶ 50; Exhibit F. Plaintiff's counsel reaffirmed his demand. Am. Compl. at ¶ 52; Exhibit G, a true and correct copy of Counsel's November 22, 2020 Email.

This was ignored. Am. Compl. at ¶ 53. Plaintiff's counsel sent a final demand letter. *Id.* at ¶ 43; Exhibit H, a true and correct copy of Counsel's November 23 Demand Letter (omitting the originally attached documents which are merely duplicative of materials already attached to Plaintiff's Amended Complaint). TTV failed to return Plaintiff's funds or provide an accounting. Am. Compl. at ¶ 55; Exhibit I, a true and correct copy of Mr. Bopp's November 23, 2020 Letter. Rather, Defendant Bopp wrote on behalf of TTV and proposed to return less than half of Plaintiff's funds *in exchange for a release of all claims*. *Id.* Unhappy with this unreasonable offer, Plaintiff filed this action.

### III. Defendants have misappropriated Plaintiff's funds and there is a substantial risk that Plaintiff's funds may continue to be irreparably misappropriated absent judicial intervention.

TTV has already disposed of over half the Eshelman Funds *by paying that money to the other Defendants*, and in support of projects unrelated to Validate the Vote. Am. Compl. at ¶ 59; Exhibit J; Exhibit R, a true and correct copy of TTV's Disbursements.

TTV had only $█████ in its account prior to Plaintiff's donations. Exhibit J at TTV010. Notably, the bank records TTV produced are dated November 5 through December 24, 2020. Exhibit J. Plaintiff suspects TTV has continued and, importantly, <u>will</u>

continue to improperly dispose of the Eshelman Funds unless the Court enjoins these improper actions, and that the other Defendants who have been improperly enriched will spend the Eshelman Funds, unless enjoined by the Court.

After Plaintiff's conditional gift, TTV paid Engelbrecht personally $30,000 (Exhibit J at TTV006 (11/30 transaction) and TTV009 (11/10 transaction), Phillips' OPSEC $750,000 (and continued to do so even after Plaintiff filed suit) (*Id.* at TTV009 (11/12 transaction) corresponding with Exhibit K, a true and correct copy of OPSEC's 11/9/20 invoice for $350,000; Exhibit J at TTV 004; Exhibit L, a true and correct copy of OPSEC's 12/7 invoice; Exhibit R), and The Bopp Law Firm $500,000. Exhibit J at TTV009 (11/10 transaction). None of the non-TTV Defendants acquired the money in good faith or for valuable consideration, as they were all directors, officers, employee or agents of TTV and knew of the conditions tied to Plaintiff's gift to TTV but did not use the funds in furtherance of the Validate the Vote 2020 mission, and because they did not properly work for the money paid to them, as their work (if any) was not for the mission. Am. Compl. at ¶ 59.

TTV has failed to comply with its duty to provide the State of Texas with accurate contact information. *See* Exhibit M, a true and correct copy the Declaration of Tim Wilson at ¶ 5.  This is particularly worrisome given the scale of Plaintiff's conditional gifts relative to TTV's annual budgets. Between 2016 and 2018, TTV's annual budgets ranged from $425,410 to $563,388. *See* Exhibits N, O, and P, true and correct copies of TTV's Forms

990, as filed with the IRS, for 2016-18.[2]  By comparison, Plaintiff's conditional gifts were massive. Given that disparity, that TTV incurred a net operating loss between 2016 and 2018, and that TTV does not appear to have significant cash reserves (*id.*), TTV does not have the financial ability to repay Plaintiff if his funds were found to be used in violation of Plaintiff's conditions.

Likewise, OPSEC was formed in September 2020. Exhibit Q, a true and correct copy of OPSEC's Articles of Formation.  As a new organization, OPSEC is unlikely to have assets to satisfy a final judgment in this case.  The other Defendants are simply individuals and a small law firm, and similarly are unlikely to be able pay back Plaintiff should a final judgment for Plaintiff be entered.

In short, all Defendants worked together on the scheme to swindle funds from Plaintiff on the pretext of using all the funds for the Validate the Vote 2020 project, while knowing the funds would be used for unrelated projects or to pay past expenses.

## ARGUMENT AND AUTHORITIES

Plaintiff seeks a TRO and preliminary injunction enjoining TTV from using any portion of the $2.5 million, and a TRO and preliminary injunction enjoining all other Defendants from using any of the money improperly paid to them by TTV on or after November 5, 2020, to prevent a further depletion of what remains of Plaintiff's donation and placing those funds beyond the reach of this Court.

---

[2] Although a 501(c)(3) organization is supposed to make its Forms 990 publicly available, and although Plaintiff's counsel requested Defendant's 2019 Form 990 from counsel for Defendant, Defendant has not made that document available.

## I.    Standard of Review

A party seeking a TRO or preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) the injunction will not disservice the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

## II.    Plaintiff is substantially likely to succeed on the merits.

Plaintiff has a substantial likelihood of success on the merits. TTV has pocketed $2.5 million of Plaintiff's and has not used the gifts according to the requisite conditions, nor has it returned the money. All other Defendants have improperly retained the Eshelman Funds.  Plaintiff is entitled to recover these funds, and until then, enjoin Defendants from further depleting any portion of the Eshelman Funds.

To satisfy the first element required, Plaintiff need only present a prima facie case. *See id*. at 596.  He is not required to show that he is certain to win or to prove an entitlement to summary judgment; even showing some likelihood of success can be enough. *Id.* at 595–96 (citing *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir.2009)); *Ass'n of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 2d 693, 696 (N.D. Tex. 2010).  Likelihood

of success on the merits is gauged by "standards provided by the substantive law." *Janvey,* 647 F.3d at 596 (internal citations omitted).  This case is governed by Texas law.

### A.  Success of the Declaratory-Judgment Claim

Plaintiff seeks an order declaring himself to be the rightful owner of the $2.5 million conditionally given to TTV and requiring TTV to immediately surrender possession of those funds to him.  Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (citations and internal quotation marks omitted).  To exercise that discretion, the Court should consider whether "the dispute [is] definite and concrete." *Id.* at 127 (citations and internal quotation marks omitted).

Here, the controversy between the parties both definite and concrete, and it will be fully resolved if the Court determines that the gift from Plaintiff to TTV was conditional, that TTV failed to fulfill the conditions, and that the remaining funds should be returned. Because Plaintiff did not make an unconditional transfer of property to TTV, he did not unconditionally gift the funds to TTV.  A gift is effective only when there is (1) a clear intent by the donor to make a gift and (2) an immediate and *unconditional* transfer of the property, such that title passes contemporaneously from the donor to the recipient. *Oadra v. Stegall*, 871 S.W.2d 882, 890 (Tex. App.—Houston [14th Dist.] 1994, no writ) (citing *Wells v. Sansing*, 245 S.W.2d 964, 965 (Tex. 1952)).

Although Plaintiff transferred $2.5 million, he did not give TTV the money unconditionally. Thus, no valid gift was made—and unconditional ownership to the money did not vest in TTV—because Plaintiff's gift was premised on a condition that did not and

will not occur. *See Yates v. Blake*, 491 S.W.2d 751, 754 (Tex. App.—Corpus Christi 1973, no writ) (holding that no valid gift was made where gift was premised upon the giving party's death, even though recipient already had the property in her possession).  Plaintiff's repeated efforts to reclaim the gift "confirms [his] intention not to vest unconditional ownership" in TTV. *Id.* Consequently, Plaintiff is still the owner of any funds TTV failed to use according to his stated conditions.

### B.  Success of the Breach of Contract Claim

Plaintiff also can demonstrate a likelihood of success on his breach of contract claim against TTV.  The elements of breach of contract are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result.  *See Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc*., 892 F.3d 719, 731 (5th Cir. 2018).

On November 5 and 13, 2020, the parties agreed Plaintiff would supply TTV with $2.5 million on the condition that Defendant would use the money for the Validate the Vote 2020 initiative. These agreements formed a valid contract, and Plaintiff performed his obligations by providing the $2.5 million. TTV breached the contract by failing to fulfill its promise to engage in certain actions for the Validate the Vote 2020 project. TTV's inaction caused Plaintiff's damages.

Thus, Plaintiff's breach-of-contract action against TTV has a likelihood for success on the merits. *See Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1178 (5th Cir. 1989) (holding that evidence of defendant's obligation to pay plaintiff

"a substantial sum of money" after plaintiff performed under the contract "is sufficient to show a potential for success on the merits").

### C. Success of the Conversion Claim

Plaintiff similarly can demonstrate a likelihood of success on his conversion claim. Conversion is "the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009).  Here, Defendants are exercising an unauthorized and wrongful control over Plaintiff's conditional gifts—acts inconsistent with Plaintiff's rights to his money.

Plaintiff's donation to TTV was not an effective "gift" because it was conditioned upon TTV's engaging in certain activities under its Validate the Vote program. Because TTV failed to meet those conditions, title to the money never vested in TTV.

Because Plaintiff still has title to and is the current owner of the money, Defendants' refusal to return it despite Plaintiff's requests is an inconsistent act with Plaintiff's rights to the money as its true owner. *See Bandy v. First State Bank, Overton*, 835 S.W.2d 609, 622 (Tex. 1992); *see also Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Thus, Plaintiff has a likelihood of success on the merits of his conversion claim.

### D. Success of the Money Had and Received Claim

Plaintiff similarly can demonstrate a likelihood of success on his money had and received claim against Defendants. To prove a claim for money had and received, the plaintiff must establish the defendant holds the money that in equity and good conscience

11

belongs to the Plaintiff. *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951).  Whether the defendant acquired the money wrongfully is irrelevant. *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex.App.—Corpus Christi 2006, pet. denied). Rather, the sole inquiry is whether the defendant received money that rightfully belongs to the plaintiff.  *Staats*, 243 S.W.2d at 687-88.

Here, Defendants hold money that, in equity and good conscience, belongs to Plaintiff. Plaintiff conditionally gave $2.5 million to TTV, in which Defendants Engelbrecht and Phillips are officers and/or directors, and in which Defendants Bopp, The Bopp Law Firm, and OPSEC are agents.  Defendants did not meet their obligations to use the money as conditioned by Plaintiff.  As demonstrated above, the non-TTV Defendants received a substantial part of the money Plaintiff conditionally donated to TTV, and are currently holding said funds, all of which in equity and good conscience belongs to Plaintiff.  Thus, Plaintiff has a likelihood of success on the merits of his money had and received claim.

### E.  Success of the Fraudulent and Negligent Misrepresentation Claims

Additionally, Plaintiff can demonstrate a likelihood of success on his fraudulent misrepresentation claim.  *See, e.g., Baribeau v. Gustafson*, 107 S.W.3d 52, 58 (Tex. App.—San Antonio 2003, pet. denied).

Multiple times in November 2020, Engelbrecht and TTV made material misrepresentations to Plaintiff that, using Plaintiff's conditional gift, TTV would comply with its stated Validate the Vote 2020 efforts.  But Engelbrecht and TTV knew at the time those representations were false, as they knew they intended to use Plaintiff's conditional

12

gifts for other purposes, such as paying off debts it owed, for other matters besides the Validate the Vote 2020 project, and not for the manner in which they told Plaintiff they would use the money.  They made these representations intending that Plaintiff gift the monies to TTV.  Plaintiff justifiably relied on Defendants' misrepresentations by making conditional gifts, and has suffered $2.5 million in damages.

Alternatively, Plaintiff can demonstrate a likelihood of success on his negligent misrepresentation claim.  *See, e.g.*, *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 793 (Tex. 1999).  Engelbrecht and TTV made representations in the course of their business and/or in a transaction in which they had a pecuniary interest that was false for the purpose of guiding Plaintiff.  Defendants failed to exercise reasonable care in gathering and disseminating the information, and Plaintiff suffered a financial loss due to his justifiable reliance.

### III. If the restraining order and preliminary injunction is not entered, Plaintiff faces a substantial threat of irreparable injury.

Without immediate relief, Plaintiff will suffer a substantial threat of irreparable injury. With each day that passes, the likelihood Plaintiff will recover the funds misappropriated through Defendants' actions diminishes because the actual and substantial likelihood that Defendants will conceal or dissipate the funds increases.

Further, should Defendants conceal or dissipate the proceeds of the misappropriation, it would likely render any judgment against Defendants uncollectible. Accordingly, if Defendants are not immediately enjoined from further dissipating the Eshelman Funds in their respective accounts, Plaintiff will not have an adequate remedy at

law. *See Texas Black Iron, Inc. v. Arawak Energy Int'l, Ltd.*, 527 S.W.3d 579, 586 (Tex.App.—Houston [14th Dist.] 2017, no pet.) ("[A] plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial.")

Here, there is a direct, proven connection between the wrongful conduct of Defendants and TTV's bank account where Plaintiff wired the money (Exhibit J at TTV0010 (11/5 transaction) and TTV009 (11/13 transaction)), The Bopp Law Firm's bank account where TTV wired $500,000 (Exhibit J at TTV009 (11/10 transaction), OPSEC's bank account where TTV wired $750,000 (*Id.* at TTV009 (11/12 transaction) corresponding with Exhibit K, a true and correct copy of OPSEC's 11/9/20 invoice for $350,000; Exhibit J at TTV 004; Exhibit L, a true and correct copy of OPSEC's 12/7 invoice; Exhibit R), and Engelbrecht's accounts where TTV wired $30,000 (Exhibit J at TTV006 (11/30 transaction) and TTV009 (11/10 transaction).

The harm to Plaintiff is a direct and proximate result of Defendants' acts. The requested relief is appropriate to preserve the status quo until a hearing can be held.

Although a preliminary injunction may be an inappropriate remedy "where the potential harm to the movant is strictly financial," *Atwood*, 875 F.2d at 1179, "the mere fact that economic damages ***may*** be available does not always mean that a remedy at law is adequate." *Janvey*, 647 F.3d at 600 (emphasis added). For example, the primary justification for granting a preliminary injunction is "to preserve a court's ability to render a meaningful decision on the merits." *Id.* But when the assets in dispute are at risk of dissipation by the defendant, a court may not be able to render a meaningful remedy without the use of an injunction. *See id.* Thus, a court "may maintain the status quo and

issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute . . . ." *Id.* (citing *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686-87 (5th Cir. 1980) ("[E]ven were [plaintiff's] remedy limited to damages, an injunction may issue to protect that remedy.")).

Additionally, although proof of the threatened harm must be more than mere speculation, evidence the defendant intends to dissipate the assets in dispute is sufficient to demonstrate more than an unfounded fear on the part of the applicant. *Janvey*, 647 F.3d at 599-600 (upholding injunction freezing assets while a receivership case proceeded to judgment); *Productos Carnic*, 621 F.2d at 686 (upholding trial court's determination that plaintiff had shown potential irreparable injury where evidence showed defendant intended to transfer the disputed property).

Here, the threat of Defendants' further dissipation of Plaintiff's money would preclude this Court from granting Plaintiff an effective remedy, either in equity or law, because Defendants' assets fall far short of Plaintiff's damages.  TTV's net assets totaled $64,743 in 2018 and TTV had only $███ in its account prior to Plaintiff's donation. Exhibits J and P.  Additionally, TTV's conduct to date transferring much of the money to the other Defendants—even after this suit was filed—evidences TTV's intent to dissipate. Exhibit J. Likewise, TTV's refusal to commit to forego spending the Eshelman Funds is itself proof of Defendants' intent.  Because the other Defendants were all employees, officers, or agents of TTV, they all know of Plaintiff's repeated requests to return the

money, yet they have not returned the money.  This demonstrates the other Defendants anticipate hiding or dissipating the portions of the Eshelman Funds they have.

After Plaintiff asked for a return of the funds, TTV vaguely stated it had other outstanding obligations. Am. Compl. at ¶ 50; Exhibit F. When Plaintiff demanded immediate return of his money, Defendant offered only $1 million subject to a release of claims. Am. Compl. at ¶ 55; Exhibit I. Consequently, when Plaintiff attempted to have TTV served with the Complaint in this matter, it was no surprise the investigator could not find TTV at the addresses associated with TTV. *See* Exhibit M*,* Wilson Declaration.  Two of the addresses were occupied by business unaffiliated with TTV.  *Id.*

Due to Defendants' bad faith and evasive conduct, Defendants' limited assets, and the fact TTV has already dissipated over half of Plaintiff's money in less than two months, it is clear Plaintiff would suffer irreparable harm absent a restraining order and injunction. Defendants' dissipation of the funds would deprive Plaintiff of a meaningful remedy after trial.

Therefore, the only adequate, effective, and complete relief to Plaintiff is to restrain Defendants from transferring, dissipating, or disbursing Plaintiff's money. *See USACO Coal Co. v. Carbomin Energy, Inc*., 689 F.2d 94, 97 (6th Cir. 1982).

### IV.  There is no harm that will result if the injunction is granted.

An injunction is proper if the threat of an ineffective remedy outweighs the damage which the injunction might cause the defendant. *Productos Carnic*, 621 F.2d at 687. Here, maintaining the status quo using an injunction would not cause Defendant any harm. If Defendants are prevented from transferring Plaintiff's funds, the only possible harm

Defendants face is the loss of progress in its Validate the Vote effort. Given that the election results are now certified, and Defendants have abandoned the efforts that were the reason for the conditional donation (Exhibit B), freezing the funds will not materially affect Defendants' interests. *Deckert*, 311 U.S. at 290 (upholding injunction as reasonable it was framed narrowly to restrain only the transfer of certain funds). Thus, the injury to Plaintiff that would occur without the injunction heavily outweighs whatever hardship Defendant might allege from being restrained from further dissipating Plaintiff's money.

### V.    Granting the injunction will serve the public interest.

Granting the restraining order and injunction would serve the public interest. The public interest in this case is the public's ability to trust in the Court to protect individual's property rights from infringement by wrongful possessors. Further, there is no evidence Defendants have used or will use Plaintiff's funds to accomplish meaningful Validate the Vote goals, the election results have been certified, and Defendants' possession of funds that it is not entitled to retain would erode the public's trust in the efficacy of the judicial system to protect individual property rights.

### VI.   The Court should enter the temporary restraining order and preliminary injunction.

Therefore, to prevent the unjust and inequitable wasting of the misappropriated funds, Plaintiff requests the Court to enjoin Defendants from using the following monies and to freeze the following amounts in the following bank accounts: (1) $2.5 million of the Eshelman Funds in TTV's Wells Fargo bank account, representing the amount Plaintiff conditionally gave to TTV (or any amount less than $2.5 million if less than that amount

currently is in TTV's bank account); (2) $500,000 of the Eshelman Funds in The Bopp Law Firm's Fifth Third Bank account (or any amount less than $500,000 if less than that amount currently is in the account); (3) $750,000 of the Eshelman Funds in OPSEC's account (or any amount less than $750,000 if less than that amount currently is in the account) and (4) $30,000 in Engelbrecht's Wells Fargo accounts (or any amount less than $30,000 if less than that amount currently is in Engelbrecht's accounts).

Accordingly, a TRO and preliminary injunction freezing the assets in those specific accounts is not only permissible, but necessary. *See Texas Black Iron*, 527 S.W.3d at 587 (injunction is not precluded where the assets at issue in the injunction are at issue in and may be used to satisfy claims in the parties' dispute); *see also G & H Partners, Ltd. v. Boer Goats Int'l Ltd.*, 896 F. Supp. 660, 663 (W.D. Tex. 1995), *aff'd sub nom. G & H Partners v. Boer Goats*, 84 F.3d 432 (5th Cir. 1996) (acknowledging TRO previously granted by the court that "prohibit[ed] the defendants from removing funds located in defendants' account in the Sunburst Bank in Louisiana […] because it contained a $120,000 payment made to defendants"); *Janvey v. Alguire*, No. 3:09-CV-724-N, 2010 WL 11626677, at *2 (N.D. Tex. May 28, 2010) (granting TRO where plaintiff provided evidence that the frozen funds are the product of fraudulent transfer).

Plaintiff will provide Defendants' counsel with notice of this Motion.  Nonetheless, Plaintiff avers the hearing on this Application for Temporary Restraining Order should go forward regardless of whether Defendants are able to participate because of the likelihood the money will disappear without prompt action. Plaintiff is willing to post a bond.

## CONCLUSION

Plaintiff respectfully requests that the Court enter the temporary restraining order and preliminary injunction.

## CERTIFICATE OF WORD COUNT

I certify that the above Application/Motion has 4,974 words.

*/s/ Douglas A. Daniels*
Douglas A. Daniels

## CERTIFICATE OF CONFERENCE

I certify that on Saturday, 1/9/2021, my associate Sabrina Tour emailed opposing counsel Brock Akers and James Bopp to confer regarding this Emergency Application/Motion.

On Monday, 1/11/2021, Mr. Akers, counsel for Defendants True the Vote, Catherine Engelbrecht, Gregg Phillips, and the OPSEC Group emailed and indicated his opposition to the Emergency Application/Motion.

On 1/11/2021, counsel for the remaining two Defendants—James Bopp, Jr. and The Bopp Law Firm—emailed that they are not available to confer until Wednesday, 1/13/2021 (four days after Ms. Tour's 1/9 email) due to a deposition and related travel. They also noted that Ms. Engelbrecht is hiking on a mountain and is not "predictably available" (however, Mr. Akers represents Ms. Engelbrecht in this matter, and Mr. Akers has emailed his opposition). We corresponded multiple times, including sending opposing counsel a draft of the Application/Motion. I also asked point blank the following question: "Are you and your firm prepared to return the $500,000 you received from True the Vote following Mr. Eshelman's conditional donation, and to provide a detailed accounting for so much of those funds you contend was legitimately earned?  If yes, then please do so immediately.  If not, then there is nothing else to confer about."  Counsel for The Bopp Firm and Mr. James Bopp did not answer the question and replied and stated that we have not complied with the Court's rules regarding efforts to seek agreement.  The email chain setting out the attempt to confer is being attached at the request of Mr. Bopp and his firm.

*/s/ Douglas A. Daniels*
Douglas A. Daniels

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of January, 2021 a true and correct copy of the above foregoing document has been forwarded to counsel of record via ECF, and to all parties via email:

Brock Akers
The Akers Firm PLLC
3401 Allen Parkway, Suite 101
Houston, TX 77019
(713) 583-8662
bca@akersfirm.com
*Counsel for Defendant TTV, Catherine Engelbrecht, and Gregg Phillips*

James Bopp, Jr.
jboppjr@aol.com
Melena Siebert
msiebert@bopplaw.com
Rob Citak
rcitak@bopplaw.com
Jeffrey Gallant
jgallant@bopplaw.com
Courtney Milbank
cmilbank@bopplaw.com
The Bopp Law Firm
1 South Sixth St.
Terre Haute, IN 47807
(812) 232-2434
*Counsel for Defendants James Bopp, Jr. and The Bopp Law Firm*

Defendant The OPSEC, LLC
Via Gregg Phillips, Registered Agent
gp@opsec.group

*/s/ Douglas A. Daniels*
Douglas A. Daniels

21

## VERIFICATION

I, Fredric Eshelman, declare under penalty of perjury that the information contained in the foregoing Application for Temporary Restraining Order and Motion for Preliminary Injunction is true and correct to the best of my knowledge and recollection.

Dated: January 9, 2021

Fredric Eshelman