# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| FREDRIC N. ESHELMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, GREGG PHILLIPS, OPSEC, LLC, JAMES BOPP, JR., AND THE BOPP LAW FIRM,<br><br>*Defendants.* | Case No. 4:20-cv-04034<br><br>**JURY DEMANDED** |

**PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF HIS VERIFIED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AS TO DEFENDANTS TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, GREGG PHILLIPS, AND OPSEC GROUP, LLC AND HIS VERIFIED MOTION FOR PRELIMINARY INJUNCTION AS TO ALL DEFENDANTS**

Respectfully submitted,

*/s/ Douglas A. Daniels*
Douglas A. Daniels
State Bar No. 00793579
Southern District I.D. Number 19347
Doug.daniels@dtlawyers.com
DANIELS & TREDENNICK PLLC
*Attorney-in-Charge for Plaintiff*

OF COUNSEL:
DANIELS & TREDENNICK PLLC
Sabrina R. Tour
State Bar No. 24093271
Southern District I.D. Number 2714789
6363 Woodway Dr., Suite 700

Houston, TX 77057-1759
(713) 917-0024 Telephone
(713) 917-0026 Facsimile
Email: sabrina@dtlawyers.com

Meghan McCaig
State Bar No. 24070083
Federal I.D. No. 1804619
Meghan.McCaig@tklaw.com
Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)

Ronald M. Jacobs (admitted *pro hac vice*)
Christopher J. Climo (admitted *pro hac vice*)
Venable LLP
rjacobs@venable.com
600 Massachusetts Avenue, NW
Washington, D.C. 20001
(202) 344-8215
(202) 344-8300 (facsimile)

# **TABLE OF CONTENTS**

I.   Overview .................................................................................................................. 1

II.  *Defendants* Bear the Burden to Prove Eshelman's Gifts Were Unconditional ........ 3

III. Eshelman Relied on Defendants' Misrepresentations in Donating $2.5 Million ..... 5

IV.  The Old Town Communications Invoice Proves that Eshelman's Gifts Were Conditional ................................................................................................................ 7

V.   The Court Should Grant the Requested Relief ......................................................... 7

# INDEX OF AUTHORITIES

**Cases**

*Adler v. SAVE*,
 74 A.3d 41 (N.J. App. Div. 2013) .................................................................................. 4

*Baribeau v. Gustafson*,
 107 S.W.3d 52 (Tex. App.—San Antonio 2003, pet. denied) ......................................... 5

*Chaison v. Chaison*,
 154 S.W.2d 961 (Tex. Civ. App.—Beaumont 1941, writ ref'd w.o.m.) ......................... 4

*In re D.S.P.*,
 210 S.W.3d 776 (Tex. App.—Corpus Christi 2006, no pet.) .......................................... 5

*Oadra v. Stegall*,
 871 S.W.2d 882 (Tex. App.—Houston [14th Dist.] 1994, no writ) ........................... 4, 5

*Touchston v. McDermott*,
 234 F.3d 1133 (11th Cir. 2000) (memorandum), *cert. denied* 531 U.S. 1061 (2001) ..... 6

*Willis v. Marshall*,
 401 S.W.3d 689 (Tex. App.—El Paso 2013, no pet.) ..................................................... 5

*Yates v. Blake*,
 491 S.W.2d 751 (Tex. Civ. App.—Corpus Christi 1973, no writ) ................................. 4

**Statutes**

TEX. BUS. AND COM. CODE § 26.01 ................................................................................ 4

Plaintiff replies as follows to Defendants' oppositions to his motion for a temporary restraining order and preliminary injunction (Dkts. 45, 47, 48).

## I. Overview

This is a case about fraud perpetrated on a philanthropist who wanted to investigate and pursue perceived problems with the 2020 presidential election. Through his representatives' research, Fred Eshelman found TTV. Based on TTV's representations, Eshelman believed TTV could identify whistleblowers, bring legal challenges (through its counsel, Jim Bopp), and persuade the public of the need to investigate and litigate. Engelbrecht told Eshelman TTV could do all of that, so he gave TTV $2 million to get the job done. Engelbrecht sent Eshelman documentation confirming how TTV would accomplish the projects Mr. Eshelman agreed to fund. After this, Eshelman transferred the funds. When told by Engelbrecht TTV needed additional funds to pursue Mr. Bopp's litigation plan, Eshelman gave TTV another $500,000.

But TTV and Engelbrecht, and her confidante Phillips, who runs OPSEC, were just stringing Eshelman along. Defendants were not accomplishing much beyond spending Eshelman's money. They were not identifying whistleblowers. They voluntarily dismissed four cookie-cutter lawsuits mere days after filing—at the incredible cost of more than $350,000 in legal fees.

Even after the election had been decided, Defendants kept stringing Eshelman along, suggesting they were making progress, all while they were actually using his money to enrich themselves and to pursue projects unrelated to the 2020 general election.

Realizing that TTV had not used his money to pursue the efforts which Defendants had represented, Eshelman revoked his gift and asked TTV to refund the remainder. TTV refused to do so and continued spending Eshelman's money. Even after TTV abandoned its Validate the Vote efforts, TTV spent his money to pursue ineffective efforts in connection with the Georgia Senate runoffs, which TTV never told Eshelman his money would be used to help fund. In its opposition, TTV mentions 360,000 voter challenges it brought in Georgia.  What it fails to mention is that of those, a total of just 38 were successful. *See Georgia voter challenges fall short, with few ballots thrown out*, Atlanta Journal-Constitution (Jan. 15, 2021), https://www.ajc.com/politics/georgia-voter-challenges-fall-short-with-few-ballots-thrown-out/SNPHXD4YXVB7LMIL5N5L3RZPLA/.

Eshelman asks this Court to order Defendants to keep $2.5 million in their bank accounts, collectively, before they squander it. Notwithstanding Defendants' characterization, Plaintiffs do not ask the Court to completely freeze their bank accounts.

Mr. Eshelman is likely to prevail on his claim for $2.5 million, either as a conditional gift that must be returned for failure of the condition, or as damages for misrepresentation. Defendants' persistent dissipation of Eshelman's funds will interfere with the Court's ability to award Eshelman relief since it will likely render Defendants judgment-proof. And even if Eshelman were not to prevail, segregating the funds until a final determination will not harm the Defendants:  this money fell into their laps on November 5 and was never in their budgets before then.

## II. *Defendants* Bear the Burden to Prove Eshelman's Gifts Were Unconditional.

There is little disagreement between Eshelman and the Defendants regarding the intent and purpose behind Eshelman's $2.5 million gifts to TTV. Notably, Eshelman gave TTV close to four times its entire 2019 budget, a sure sign that he had a particular purpose for giving and did not intend to pay general operating expenses.

The following undisputed facts support Eshelman's verified assertion that his gifts were conditional:

- Mr. Eshelman connected with TTV barely 24 hours after Election Day to find a partner to investigate perceived serious problems with the election. Verified Am. Compl. ("VAC") (Dkt. 20) ¶ 13; Engelbrecht Decl. (Dkt. 45-1) ¶¶ 10-12.

- After discussing TTV's specific plans to identify, investigate, and litigate allegations of fraud in the presidential election, Eshelman wired TTV $2 million. Then, after Engelbrecht said that TTV needed more money to support its litigation efforts, Eshelman wired TTV $500,000. Engelbrecht Decl. ¶¶ 12, 19.

- Engelbrecht memorialized what she had represented TTV intended to undertake with Eshelman's gift. TTV Opp. (Dkt. 47) at 4; Bopp Opp. (Dkt. 45) at 5. The resulting document described TTV's goal unambiguously: "To ensure the ***2020 election returns*** reflect one vote cast by one eligible voter and thereby protect the right to vote and the integrity of the election." VAC, Ex. 1 (Dkt. 20-1).

- At least $1 million of Eshelman's initial gift was to be used in support of Defendants' Validate the Vote whistleblower efforts. *See* Engelbrecht Decl. ¶ 13. (TTV relies upon a self-serving affidavit to suggest that the remaining $1 million of Eshelman's initial gift was intended to fund TTV's "general operations," but substantial evidence suggests the remaining $1 million was to be used to fund communication efforts relating to Validate the Vote. *See* VAC ¶ 20; Engelbrecht Decl., Ex. 5 at 11-13.)

- Neither Engelbrecht nor Bopp disputed the conditional nature of Eshelman's gifts when he revoked them and demanded repayment for TTV's failure to use the funds to pursue the efforts they had previously discussed with him. VAC, Exs. 5-8 (Dkts. 20-5 through 20-8).

3

Despite those undisputed facts, Defendants argue that Eshelman's gift was not given conditionally. In addition to being inconsistent with the evidence, Defendants' arguments fail as a matter of law.

Defendants assert conditional gifts cannot be made orally and there must be a separate agreement with respect to a so-called "right of reverter." But conditional gifts to charitable entities are not covered by the Texas statute of frauds. TEX. BUS. AND COM. CODE § 26.01. Thus, they may be enforced even if made orally. And Texas courts have found that an orally imposed condition was sufficient to demonstrate the donor's "intention not to vest unconditional ownership" in the donee such that she retained power to revoke the gift. *See Yates v. Blake*, 491 S.W.2d 751, 753-54 (Tex. Civ. App.—Corpus Christi 1973, no writ). Courts in other jurisdictions also enforce orally imposed conditions on gifts. *See generally Adler v. SAVE*, 74 A.3d 41 (N.J. App. Div. 2013).

Defendants' reliance on the absence of an agreement for a "right of reverter" finds no support under Texas law. Rather, Texas courts ask whether the donor has "vest[ed] the ownership . . . in the donee, immediately and **unconditionally**." *Chaison v. Chaison*, 154 S.W.2d 961, 963-64 (Tex. Civ. App.—Beaumont 1941, writ ref'd w.o.m.) (emphasis added). Where a donor has imposed conditions upon the gift, the donor "has power to revoke" the gift. *Id.*; *see also Oadra v. Stegall*, 871 S.W.2d 882, 890 (Tex. App.—Houston [14th Dist.] 1994, no writ) (addressing the elements of a valid gift under Texas law and the application thereof).

Plaintiff has established a prima facie case his gifts were conditioned upon their use to support Defendants' Validate the Vote efforts. But as the parties arguing Eshelman

4

made an unconditional gift to TTV, *Defendants* bear the burden to prove the unconditional gift "by clear and convincing evidence." *Oadra*, 871 S.W.2d at 891. Defendants have not adduced sufficient evidence to "produce in the mind of the trier of fact a firm belief or conviction" that Eshelman intended to give the $2.5 million to TTV *unconditionally*. *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.). Thus, Defendants cannot establish that Eshelman is sufficiently *unlikely* to prevail so as to defeat his request for injunctive relief.

But, as discussed in the next section, Eshelman will prevail even if the fact-finder does not find that the gifts were conditional.

### III. Eshelman Relied on Defendants' Misrepresentations in Donating $2.5 Million.

Eshelman has also established he made his gifts in reliance upon Engelbrecht and TTV's misrepresentations regarding TTV's plans to identify, investigate, and litigate fraud in the 2020 presidential election, and that he has lost at least $2.5 million.

Defendants' only argument disputing Plaintiff's likelihood of success on the merits on his claims for fraudulent and negligent misrepresentation is that he cannot prevail because he has failed to show his gifts to TTV were conditional. A gift's conditionality is irrelevant to whether it was secured by means of fraudulent or negligent misrepresentation. *See Baribeau v. Gustafson*, 107 S.W.3d 52, 58 (Tex. App.—San Antonio 2003, pet. denied) (elements of fraudulent misrepresentation); *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.) (elements of negligent misrepresentation).

Despite representing that the Eshelman Funds would be used to identify, investigate, and litigate fraud in the 2020 general election, TTV and Engelbrecht's actual expenditures

5

confirm they used the funds for unrelated purposes, including paying off TTV's debts, funding other matters unrelated to the 2020 general election, and personally enriching themselves and the other Defendants. *See* Motion (Dkt. 41-1) at 5-7, 13-16. Engelbrecht specifically edited Bopp's draft litigation plan to include the false statement that Bopp was the "lead attorney in *Bush v. Gore*." VAC, Ex. 1; *see* Bopp Opp. (Dkt. 45) at 5 (Engelbrecht edited Bopp's litigation plan reproduced at Engelbrecht Decl., Ex. 3 at 8, which does not include this language). A review of the docket at all phases of the *Bush v. Gore* litigation confirms Bopp never even entered an appearance in that case. Rather, he unsuccessfully sought injunctive relief on behalf of certain Florida voters in a tangentially related case brought in federal court. *See Touchston v. McDermott*, 234 F.3d 1133 (11th Cir. 2000) (memorandum), *cert. denied* 531 U.S. 1061 (2001). That misrepresentation could only have been made to convince Eshelman and other unsuspecting donors that TTV had the wherewithal to pursue serious litigation relating to the 2020 general election and to induce those donors to give money to fund those efforts.

    Defendants' argument fails to refute Plaintiff's sworn claim that he relied upon Engelbrecht and TTV's misrepresentations when he agreed to give TTV $2.5 million. VAC ¶¶ 93, 96. Having made a prima facie showing of misrepresentation, Plaintiff is sufficiently likely to prevail on those claims to warrant injunctive relief.

## IV. The Old Town Communications Invoice Proves that Eshelman's Gifts Were Conditional.

TTV attempts to characterize the Old Town Communications invoice as evidence of some nefarious plot. Actually, it proves Eshelman's intent that his gifts be used to advance the Validate the Vote initiative.

Eshelman has no beneficial interest in Old Town. Defendants' professed ignorance of Old Town and its services is false. Engelbrecht discussed with Plaintiff on November 5 that $1 million of Plaintiff's initial $2 million gift was to be used to fund efforts to publicly communicate TTV's findings. Communications between Engelbrecht and Tom Crawford on November 5 confirm the parties' understanding that Old Town would handle those efforts. Engelbrecht Decl., Ex. 5 at 1. To that end, Dikran Yacoubian attended a November 11 meeting with Engelbrecht, Phillips, Bopp and others in Austin to develop a communications strategy. Engelbrecht Decl., Ex. 5 at 11-13. At that meeting, Engelbrecht claimed Old Town's involvement was "providential." Shortly afterward, Yacoubian sent TTV an invoice for the contemplated $1 million in communications efforts. However, he subsequently withdrew that invoice after it became clear that TTV did not intend to use Old Town's services (or anyone else's, for that matter). Engelbrecht Decl., Ex. 5 at 11-13.

## V. The Court Should Grant the Requested Relief

Eshelman has shown he is likely to prevail on the merits of this case. Defendants have failed to carry their burden to prove the gift was unconditional. Eshelman has shown it was a conditional gift and was revoked. Alternatively, Eshelman will prevail on his

7

misrepresentation claims, which provide an independent basis for finding that Eshelman suffered harm of $2.5 million.

Eshelman asks the Court to preserve its ability to render a meaningful judgment by preserving that $2.5 million until the case is fully resolved.

## CERTIFICATE OF WORD COUNT

I certify that, according to the Word Count feature of Microsoft Word, this reply brief (not including the cover pages, indexes, certificates, and signature block) contains 1,924 words.

*/s/ Douglas A. Daniels*
Douglas A. Daniels

## CERTIFICATE OF CONFERENCE

I certify that counsel for all parties conferred via Zoom on 1/13/2021 regarding Plaintiff's request for relief in his Application for Temporary Restraining Order and Motion for Preliminary Injunction (Dkt. 41-1), to which this Reply pertains. Plaintiff and Defendants James Bopp, Jr. and The Bopp Law Firm were able to come to a side agreement as to the TRO portion of Plaintiff's Application, but not as to the preliminary injunction portion of Plaintiff's Motion. Plaintiff and the rest of the Defendants were not able to come to an agreement regarding the relief requested in Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction.

*/s/ Douglas A. Daniels*
Douglas A. Daniels

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of January, 2021 a true and correct copy of the above foregoing document has been forwarded to counsel of record via ECF:

>Brock Akers
>The Akers Firm PLLC
>3401 Allen Parkway, Suite 101
>Houston, TX 77019
>(713) 583-8662
>bca@akersfirm.com
>*Counsel for Defendants TTV, Catherine Engelbrecht, OPSEC and Gregg Phillips*
>
>James Bopp, Jr.
>jboppjr@aol.com
>Melena Siebert
>msiebert@bopplaw.com
>Rob Citak
>rcitak@bopplaw.com
>Jeffrey Gallant
>jgallant@bopplaw.com
>Courtney Milbank
>cmilbank@bopplaw.com
>The Bopp Law Firm
>1 South Sixth St.
>Terre Haute, IN 47807
>(812) 232-2434
>*Counsel for Defendants James Bopp, Jr. and The Bopp Law Firm*

>>*/s/ Douglas A. Daniels*
>>Douglas A. Daniels